

# MEMORANDUM OPINION

No. 04-07-00767-CR

Kenneth Ray **ARMSTRONG**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-8495
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:       Karen Angelini, Justice
              Rebecca Simmons, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:   March 4, 2009

AFFIRMED

Appellant Kenneth Ray Armstrong was convicted by a jury of aggravated assault.  On appeal, Armstrong argues (1) that he received ineffective assistance of counsel resulting in his conviction and (2) that the evidence failed to demonstrate that the knife used in the assault was a deadly weapon.  We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

On November 26, 2007, James Baldwin and August Felder were at Skinny's Bar when Armstrong walked behind Felder and hit him twice in the back of the head.  Additionally, after

Armstrong struck Felder, Baldwin testified that Felder exclaimed, "Man, why you hitting me?" and a bar employee, Lucy Taylor, subsequently heard Felder say, "KC [Armstrong], you just cut me." Although neither Baldwin nor Taylor recalled seeing a knife in Armstrong's hand, the incident left Felder with a cut across the back of his head and ear, and a puncture wound on the back of his shoulder. Taylor subsequently found a knife on the floor and placed it on the bar. Felder was transported to the hospital where he received stitches for a puncture wound to his shoulder and cuts to the back of his head and ear. After he was released, Felder returned to the hospital a second time due to additional bleeding from the cut to his ear.

Doug Ryan from the San Antonio Police Department Crime Scene Unit obtained a black folding lock-blade knife in the open position, with blood still on the blade found at Skinny's Bar. During his testimony, Ryan confirmed that the knife in question was capable of causing serious bodily injury or death if used to slash at or stab another individual.

Although neither Baldwin nor Taylor saw Felder provoke Armstrong, Taylor testified that she overheard Armstrong state, "I'm going to start some shit." At trial, Armstrong advanced a self-defense theory. Armstrong testified at trial that he used the knife against Felder in self-defense after a struggle ensued between the two men. He explained he only "hit" Felder with the knife and did not cut him as the State alleged. Armstrong further claimed that he dropped the knife as he and Felder wrestled to the floor. Contradicting Armstrong, Taylor testified that he never saw the two men fighting on the ground and Felder testified that he never fought with Armstrong.

The jury found Armstrong guilty of aggravated assault with a deadly weapon. During the punishment phase, Armstrong entered a plea of true to the enhancement allegations. Based on

his habitual offender status, the trial court sentenced Armstrong to thirty years confinement in the Institutional Division of the Texas Department of Criminal Justice.

INEFFECTIVE ASSISTANCE OF COUNSEL

In his first appellate issue, Armstrong alleges he received ineffective assistance of counsel based on counsel's failure to sufficiently familiarize himself with the State's evidence and counsel's decision to advise Armstrong to testify.

## A. Standard of Review

A defendant is entitled to effective assistance of counsel under both the United States and Texas Constitutions. See U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art. 1.051 (Vernon Supp. 2008). On appeal, in order to prove ineffective assistance of counsel, the appellant bears the burden to prove counsel's assistance fell below an objective professional standard of reasonableness and thereby prejudiced appellant's defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To establish prejudice, an appellant must show, by a preponderance of the evidence, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998) (en banc) (per curiam).

When reviewing an ineffective assistance claim, "[a]n appellate court looks to the totality of the representation and the particular circumstances of each case." *Thompson*, 9 S.W.3d at 813. There is a strong presumption that counsel's actions met the objective standard of reasonableness. *Id*. To defeat this presumption, any claim of ineffective assistance must be firmly found within the record. *Id*. at 814. More specifically, "[the] record must affirmatively demonstrate the alleged ineffectiveness." *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App.

2002). On direct appeal, however, the record is generally insufficient to show that counsel's representation fell below the first part of the *Strickland* standard. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (en banc). Based on the very nature of the trial atmosphere, the reasonableness of counsel's trial court choices and tactics do not generally appear in the record. *See id*. This case is no different.

## B. Decision for Armstrong to Testify

Armstrong contends that counsel encouraged Armstrong to testify. According to Armstrong, absent his testimony, the State could not affirmatively link the knife to Armstrong, and thus, counsel's decision for Armstrong to testify was unreasonable. A defendant's decision to testify is absolute and belongs solely to the defendant. See U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The record is silent regarding any advice given by counsel regarding Armstrong's decision to testify. Accordingly, we are unable to determine whether the decision to testify was Armstrong's alone or whether the decision was made by trial counsel. *See Escobedo v. State*, 6 S.W.3d 1, 10-11 (Tex. App.—San Antonio 1999, pet. ref'd). Appellant's presumption that counsel advised Armstrong to testify is pure speculation. *See Bone*, 77 S.W.3d at 835. Without specific evidence contained within the record, we will not speculate as to the communications between trial counsel and Armstrong. *See id*.

## C. Counsel's Failure to Familiarize Himself with State's Case

Armstrong asserts that if counsel had familiarized himself with the witness statements contained within the State's file, he would have realized the lack of evidence linking the knife to Armstrong. Armed with such knowledge, trial counsel would not have encouraged Armstrong to testify. The record, however, does not substantiate Armstrong's arguments. The State presented evidence sufficiently linking Armstrong to the knife via circumstantial evidence, including but

not limited to the testimony of Baldwin and Taylor.  Additionally, Taylor and Ryan testified to finding the knife on the floor immediately after the incident with blood still on the blade.  More importantly, however, Felder testified that Armstrong cut him with a knife and that he had previously seen Armstrong carrying a knife at Skinny's Bar.

This court will not speculate as to the reasons for counsel's decision to pursue a self-defense claim, and the strong presumption of reasonableness simply is not overcome by this silent record.  *See Hernandez v. State*, 198 S.W.3d 257, 269-70 (Tex. App.—San Antonio 2006, pet. ref'd.).  Because the specific reasons for counsel's actions are absent from the record, Armstrong failed to rebut the presumption that counsel made his decisions based on sound trial judgment.  *See id.*  In accordance with the standards set forth in *Strickland*, trial counsel's assistance did not fall below an objective standard of reasonableness or prejudice Armstrong's defense.  Therefore, Armstrong's first issue on appeal is overruled.

SUFFICIENCY OF EVIDENCE

In his second appellate issue, Armstrong argues that the evidence put forth to support the deadly weapon finding is both legally and factually insufficient.

**A.  Standard of Review**

When reviewing the legal sufficiency of the evidence, an appellate court examines "the evidence in the light most favorable to the prosecution" and determines whether "*any* rational trier of fact could have found [the appellant guilty] beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *accord Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)(en banc).  The standard of review is the same regardless if the evidence is direct, circumstantial, or both.  *See Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

In a factual sufficiency review, we view the evidence in a neutral light and only reverse if (1) the evidence is weak enough to make the verdict "clearly wrong and manifestly unjust," or (2) the verdict is "against the great weight and preponderance of the evidence." *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (internal quotation marks omitted). However, the court must defer to "the fact finder's role as the sole judge of the weight and credibility given to witness testimony." *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc).

## B. Deadly Weapon Finding

A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 2003). The offense is elevated to an aggravated assault if the actor "causes serious bodily injury to another . . . or uses or exhibits a deadly weapon during the commission of the assault." *Id*. § 22.02(a). The term "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B) (Vernon 2003). According to the Penal Code, serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46).

In determining whether the object used in the assault was a deadly weapon, this court must be mindful of the word "capable" and its placement within the Code's definition of a deadly weapon. *See Bailey v. State*, 38 S.W.3d 157, 159 (Tex. Crim. App. 2001) (en banc). The statute specifically allows capable to encompass actions that threaten deadly force, regardless of whether the actor intended to use deadly force. *Id.* Thus, the fact that a knife is not a deadly weapon per se does not prevent the knife from qualifying as a deadly weapon, as defined by the Texas Penal Code. *See id*.

**C. Analysis**

Although the witness accounts of the events causing Felder's injury's varied, there is sufficient evidence in the record to support the conclusion that the injuries sustained by Felder were the result of an unprovoked attack by Armstrong. Taylor and Baldwin testified that Armstrong attacked Felder from behind, yet neither saw Felder push Armstrong until after Armstrong struck him in the back of the head. Felder sustained two different injuries as a result of the incident: (1) a cut to the back of his head extending across his neck and through his ear, and (2) a puncture wound to his back, just below the shoulder. The jury also heard testimony regarding the substantial amount of bleeding from the wounds. Moreover, Felder's injuries fit the description of events by both Taylor and Baldwin. Ryan confirmed the presence of blood on the knife and that, in his opinion, the knife was capable of causing death or serious bodily injury. The nature of Felder's injuries support the jury's finding that Armstrong used the knife in a manner capable of causing death or serious bodily injury. *See Tucker v. State*, No. PD-0742-07, 2008 WL 5047699, at *3 (Tex. Crim. App. Nov. 26, 2008); *Morales v. State*, 633 S.W.2d 866, 868-69 (Tex. Crim. App. 1982).

Armstrong was the only witness to testify that he used the knife in self-defense. He admitted that he struck Felder with the knife. At trial, the jury viewed Felder's scars and Armstrong's knife. They heard Armstrong acknowledge that the knife introduced into evidence was the same knife he used against Felder. Evidence of the nature of the attack in this case, combined with the readily apparent scar across the back of Felder's head, was sufficient for a rational juror to conclude that the weapon used was capable of causing serious bodily injury or death and was not against the great weight and preponderance of the evidence. We, therefore, overrule Armstrong's second issue on appeal.

**CONCLUSION**

Based on the record before us, Armstrong failed to show that trial counsel's actions fell below an objective standard of reasonableness. Additionally, when the evidence is viewed in a light most favorable to the prosecution, the evidence is sufficient to support that Kenneth Ray Armstrong used the knife in a manner capable of causing death or serious bodily injury. When viewed in a neutral light, the verdict is not against the great weight and preponderance of the evidence, nor is the evidence so weak that the verdict is clearly wrong and manifestly unjust. Accordingly, we affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH